# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW FORD and ELISABETH YUSCAVAGE, on behalf of themselves and similarly situated employees, | : : : | No. 3:14cv227 |
| Plaintiffs | : : | (Judge Munley) |
| v. | : : | |
| LEHIGH VALLEY RESTAURANT GROUP, INC., | : : | |
| Defendant | : | |

## MEMORANDUM

Before the court for disposition is defendant's motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 14).  This motion is fully briefed and ripe for disposition.  For the following reasons, the court will deny defendant's motion.

**Background**

The instant putative class-action complaint arises from Defendant Lehigh Valley Restaurant Group Inc.'s (hereinafter "defendant") alleged violation of the Fair Labor Standards Act's minimum wage requirement. (Doc. 1, Compl. (hereinafter "Compl.") ¶ 34).

Defendant owns and operates nineteen (19) Red Robin Restaurant franchises in Eastern Pennsylvania.  (Id. ¶ 6).  Plaintiffs Matthew Ford and

1

Elisabeth Yuscavage (collectively "plaintiffs") worked as servers at defendant's Wilkes-Barre and Dickson City restaurants.[1]

Defendant pays servers $2.83 per hour. (Id. ¶ 15). To meet the Fair Labor Standards Act's (hereinafter "FLSA") minimum wage requirement of $7.25 per hour, defendant directed plaintiffs and all other servers to retain their tips. (Id.). As such, defendant took a "tip credit" of $4.42 per hour worked.[2] (Id.)

Defendant's mandatory "tip credit" policy had one caveat. Defendant required servers to contribute three percent (3%) of their gross sales to a "tip pool." (Id. ¶ 16). Defendant then distributed the proceeds from this server-generated "tip pool" to restaurant bartenders, expediters (hereinafter "expos") and busboys. (Id. ¶ 17).

Plaintiffs aver that expos worked predominantly in the kitchen and rarely interacted with customers, thus their inclusion in the tip pool was in

---

[1] Plaintiff Matthew Ford worked as a server at defendant's Wilkes-Barre restaurant from December 2010 to February 2012. (Compl. ¶ 10). Plaintiff Elisabeth Yuscavage was a server at defendant's Wilkes-Barre and Dickson City restaurants from February 2011 to September 2013. (Id. ¶ 11).

[2] Defendant's tip credit amount is calculated by subtracting the hourly wage ($2.83) from the federal minimum wage ($7.25), which equals $4.42 per hour.

contravention of the FLSA.  (Id. ¶ 18).  Accordingly, plaintiffs filed a three count complaint alleging violations of: 1) the FLSA; 2) Pennsylvania's Minimum Wage Act and 3) Pennsylvania's Wage Payment and Collection Law.  (Id. ¶¶ 34, 41, 47).  Because the latter two causes of actions involve state statutes, the parties have agreed to litigate these claims in state court.  (Doc. 24).  Thus, the only remaining claim is Count One—violation of the FLSA's minimum wage requirement.

Defendant filed a motion to dismiss count one on April 15, 2014.  (Doc. 14).  The parties then briefed the issues bringing the case to its present posture.

**Jurisdiction**

As plaintiffs bring suit pursuant to the FLSA, 29 U.S.C. § 201 *et seq*., the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

Defendants filed their motions to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6)

3

motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Plaintiffs' complaint avers that the inclusion of expos in the tip pool violated the FLSA's minimum wage requirement.  Defendant moves to dismiss the complaint contending that its inclusion of expos in the tip pool does not violate the FLSA.  After careful review, the court finds that plaintiffs' complaint alleges facts sufficient to establish a cause of action under the FLSA.

Plaintiffs bring their wage claim pursuant to the FLSA, which requires that employers pay their employees a minimum wage of $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  The FLSA, however, provides an exception to the minimum wage requirement for "tipped employee[s]."  See 29 U.S.C. § 203(t) (defining "tipped employee" as an employee in "an occupation in which he customarily and regularly receives more than $30 a month in tips.").

Known as a "tip credit," this exception allows for employers to pay "tipped employees" an hourly rate of $2.13 which is then supplemented by the employee's retained tips to meet the required federal minimum wage.  29 U.S.C. § 203(m) (hereinafter "section 203(m)").[3]  An employer can

---

[3] In the instant case, defendant paid plaintiffs $2.83 per hour in accordance with minimum wage for tipped employees set by state law.

utilize the tip credit only when: 1) an employer informs the employee that a tip credit is being utilized and the amount of such a credit; 2) the employee makes tips equaling the tip credit amount and 3) the employee retains all tips collected.  29 C.F.R. § 531.59.  The last paragraph of section 203(m), however, contains an exception to the requirement that employees retain all tips collected.  Specifically, section 203(m) allows "the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m).

In the instant case, the parties agree that plaintiffs qualify as "tipped employees."  The parties also agree that defendant notified plaintiffs of its tip credit practices and plaintiffs made tips equaling the tip credit amount. The parties, however, dispute whether expos "customarily and regularly receive tips" for purposes of inclusion within the tip pool.

Plaintiffs allege expos are not "tipped employees" who "customarily and regularly receive tips" because they work "almost all [the] time in or near the kitchen area and rarely interact with restaurant customers." (Compl. ¶¶ 18, 34).  Defendant asserts that the definition of "customarily and regularly receives tips" requires the receipt of tips at a "frequency which must be greater than occasional, but which may be less than

6

constant." (Doc. 18, Def.'s Br. in Supp. Mot. to Dismiss at 7).  Stated differently, defendant contends that expos are "tipped employees" because they regularly shared in the proceeds of defendant's mandated tip pool. Therefore, the parties agree that if section 203(m) requires direct customer interaction to receive tip pool funds, the instant motion to dismiss must be denied.

This case, which revolves around the interpretation of the statutory phrase "customarily and regularly receives tips," is one of first impression in the Third Circuit.  The court, therefore, begins with the text of section 203(m), and the understanding that "[t]he FLSA is remedial and is construed broadly, but exemptions to it are construed narrowly i.e., against the employer." Smith v. Johnson & Johnson, 593 F.3d 280, 284 (3d Cir. 2010) (citing Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008)).

In cases of statutory interpretation, the Third Circuit Court of Appeals has stated that "our inquiry begins with the language of the statute and focuses on Congress's intent." United States v. Berrios, 676 F.3d 118, 139 (3d Cir. 2012) (citation omitted).  A court first must examine the text and give its words their ordinary meaning. Moskal v. United States, 498 U.S. 103, 108 (1990) (citations omitted); see also Kosak v. United States, 679

7

F.2d 306, 308 (3d Cir. 1982) (holding that "'our starting point must be the language employed by Congress'") (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979)).  Where the statutory meaning is unclear, the Court looks to the legislative history to resolve any conflict.  See Cohen v. De La Cruz, 106 F.3d 52, 57-58 (3d Cir. 1997) (citing Patterson v. Shumate, 504 U.S. 753, 761 (1992)).  If the statutory language is neither vague nor ambiguous, however, the inquiry begins and ends with the language of the statute itself.  Ross v. Hotel Emps. and Rest. Emps. Int'l Union, 266 F.3d 236, 245 (3d Cir. 2001).

     As previously stated, section 203(m) permits "the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m).  Turning to the dominant words of the statutory provision, the ordinary meanings of "customarily," "regularly," and "pooling" are neither vague nor ambiguous.  According to Webster's New World Dictionary, the adverb "customarily" means "according to custom; usually."  WEBSTER'S NEW WORLD DICTIONARY 341 (3d ed. 1988).  Next, the adjective "regular," from which the adverb "regularly" is derived, means "recurring at set times or functioning in a normal way."  Id. at 1131.  Lastly, in ordinary usage, the verb "pool," the root of "pooling," means "to contribute to a pool, or

common fund; make a common interest or form a pool (of)." Id. at 1049. Moreover, the adverbs "customarily" and "regularly" are stated in the conjunctive rather than the disjunctive. As such, the FLSA's plain meaning requires employees to customarily **and** regularly receive tips to be included in the tip pool.

Taken as a whole, section 203(m)'s plain meaning beckons the image of customer service employees who receive tips directly from customers in a recurring fashion **and** as a matter of occupational custom. Furthermore, the addition of the word "pooling," which means "to contribute" or "make a common interest," signifies that **all** customer service employees with direct customer interaction would "contribute" the tips they personally received into the "common interest" or tip pool. As such, section 203(m)'s plain meaning requires that employees who "customarily and regularly receive tips" have more than *de minimis* direct customer interaction.

Defendant ignores section 203(m)'s plain meaning and argues that the correct measure of "customarily and regularly receive tips" is the frequency of receiving tips even if those tips do not come directly from customers. Stated differently, defendant contends that the regular

9

inclusion of expos within the tip pool supports their classification as "tipped employees" receiving tips at a frequency greater than occasional.  Rather than receiving tips directly from customers, defendant argues that expos satisfy this requirement of frequency through their proceeds from the tip pool.  A review of cases from the circuits that have addressed this issue persuades us that defendant's interpretation is mistaken.

The Sixth Circuit Court of Appeals addressed the issue of which employees "customarily and regularly receive tips" under section 203(m) in the matter of Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 301 (6th Cir. 1998).  In Kilgore, the Sixth Circuit affirmed the inclusion of hosts within the tip pool because, if not for a restaurant policy precluding hosts from receiving tips directly from customers, they were engaged in a tipped occupation whereby they would frequently receive greater than $30 in tips per month.  Id.  Thus, although the court validated a tip pool in which recipients did not directly contribute, the court also implicitly recognized the significance of direct customer interaction.

This requirement that employees have more than *de minimis* direct customer interaction in order to be included in a tip pool has also found support in other courts of appeal beyond the Sixth Circuit.  For example, in

the Second Circuit case of <u>Shahriar v. Smith & Wollensky Restaurant Group, Inc.</u>, the court summarized the finding within the Second Circuit and elsewhere that a tip pool is invalid if "it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers."  <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 240 (2d Cir. 2011).

Similarly, the Fifth Circuit has held that "direct customer interaction" is **highly relevant** to tip eligibility.  <u>Roussell v. Brinker Int'l, Inc.</u>, 441 F. App'x. 222, 231 (5th Cir. 2011) (emphasis added).  The <u>Roussell</u> court found that the inclusion of QAs, or Quality Assurance employees, invalidated a tip pool because the QAs did not have sufficient direct customer interaction.  <u>Roussell</u>, 441 F. App'x at 231-32.

Furthermore, even within the Sixth Circuit, the <u>Kilgore</u> holding requiring direct customer interaction for inclusion within a tip pool has been affirmed.  The Sixth Circuit Court of Appeals has found that the inclusion of salad makers invalidates a tip pool because these employees did not receive tips directly from customers and did not interact with customers.  <u>Myers v. The Copper Cellar Corp</u>., 192 F.3d 546, 550-51 (6th Cir. 1999).

11

Based on this case law, section 203(m)'s plain meaning and the directive that exemptions to the FLSA are narrowly construed, we conclude that to properly take part in a tip pool a restaurant employee must have direct customer interaction. Accordingly, section 203(m)'s requirement that employees "customarily and regularly receive tips" to be included in this tip pool will be a fact intensive inquiry focusing on an employee's level of direct customer interaction.

Here, plaintiffs allege that "[e]xpos spend almost all of their time working in or near the kitchen area and rarely interact with restaurant customers." (Compl. ¶ 18). Viewing plaintiffs' allegations as true, this allegation, read in conjunction with plaintiffs' remaining factual averments, may establish a cause of action under the FLSA. Ergo, the court will deny defendant's motion to dismiss.

**Conclusion**

For the reasons stated above, we conclude that to properly participate in a tip pool a restaurant employee must have direct customer interaction. This fact intensive inquiry requires the benefit of a fully developed factual record. Accordingly, at this early stage of litigation, plaintiffs have stated a claim upon which relief can be granted and

defendant's motion to dismiss plaintiffs' FLSA claim will be denied.  An appropriate order follows.


**Date:   07/09/14**                           **s/ James M. Munley**
                                               **JUDGE JAMES M. MUNLEY**
                                               **United States District Court**