IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW FORD and ELISABETH YUSCAVAGE, on behalf of themselves and similarly situated employees,<br>　　　　　　　Plaintiffs<br><br>　　　v.<br><br>LEHIGH VALLEY RESTAURANT GROUP, INC.,<br>　　　　　　　Defendant | No. 3:14cv227<br><br>(Judge Munley) |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is defendant's motion to certify an issue for immediate appeal and partial stay. (Doc. 42). This motion is fully briefed and ripe for disposition.

**Background**

The instant putative class-action complaint arises from Defendant Lehigh Valley Restaurant Group Inc.'s (hereinafter "defendant") alleged violation of the Fair Labor Standards Act's minimum wage requirement. (Doc. 1, Compl. (hereinafter "Compl.") ¶ 34).

Defendant owns and operates nineteen (19) Red Robin Restaurant franchises in Eastern Pennsylvania. (Id. ¶ 6). Plaintiffs Matthew Ford and Elisabeth Yuscavage (collectively "plaintiffs") worked as servers at

defendant's Wilkes-Barre and Dickson City restaurants.[1]

Defendant pays servers $2.83 per hour. (Id. ¶ 15). To meet the Fair Labor Standards Act's (hereinafter "FLSA") minimum wage requirement of $7.25 per hour, defendant directed plaintiffs and all other servers to retain their tips. (Id.) As such, defendant took a "tip credit" of $4.42 per hour worked.[2] (Id.)

Defendant's mandatory "tip credit" policy had one caveat. Defendant required servers to contribute three percent (3%) of their gross sales to a "tip pool." (Id. ¶ 16). Defendant then distributed the proceeds from this server-generated "tip pool" to restaurant bartenders, expediters (hereinafter "expos") and busboys. (Id. ¶ 17).

Plaintiffs aver that expos worked predominantly in the kitchen and rarely interacted with customers, thus their inclusion in the tip pool violated the FLSA. (Id. ¶ 18). Accordingly, plaintiffs filed a three count complaint alleging

---

[1] Plaintiff Matthew Ford worked as a server at defendant's Wilkes-Barre restaurant from December 2010 to February 2012. (Compl. ¶ 10). Plaintiff Elisabeth Yuscavage was a server at defendant's Wilkes-Barre and Dickson City restaurants from February 2011 to September 2013. (Id. ¶ 11).

[2] Defendant's tip credit amount is calculated by subtracting the hourly wage ($2.83) from the federal minimum wage ($7.25), which equals $4.42 per hour.

2

violations of: 1) the FLSA; 2) Pennsylvania's Minimum Wage Act and 3) Pennsylvania's Wage Payment and Collection Law.  (Id. ¶¶ 34, 41, 47).  The parties have agreed to litigate the state law claims, Counts 2 & 3, in state court.  (Doc. 24).  Thus, the only remaining claim is Count One-violation of the FLSA's minimum wage requirement.

Defendant filed a motion to dismiss count one on April 15, 2014 (Doc. 14), which the court denied on July 9, 2014 (Doc. 41).  Defendant presently moves the court to amend our July 9th order to certify our ruling for immediate appeal.  (Doc. 42).  The parties then briefed the issues bringing the case to its present posture.

**Jurisdiction**

As plaintiffs bring suit pursuant to the FLSA, 29 U.S.C. § 201 *et seq*., the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Discussion**

Defendant seeks to appeal our order denying their motion to dismiss plaintiff's FLSA claim.  Rule 5 of the Federal Rules of Appellate Procedure provides:

3

> If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement. In that event, the time to petition runs from the entry of the amended order.

FED. R. APP. P. 5(a)(3).

Presently, the defendant moves to have the court amend its motion to dismiss order to include language allowing for immediate appeal. The following three criteria must be met for the court to exercise its discretion to grant an immediate appeal:

>  (1) the order must involve a controlling question of law;
>
>  (2) there must be substantial ground for difference of opinion as to the order's correctness; and
>
>  (3) immediate appeal will materially advance the ultimate termination of the litigation.

Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974); see also 28 U.S.C. § 1292(b).

The Third Circuit has further explained that "Congress intended that section 1292(b) should be sparingly applied. It is to be exercised only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast

4

number of appeals from interlocutory orders in ordinary litigation." Milbert v. Bison Lab., Inc., 260 F.2d 431, 433 (3d Cir. 1958); Sporck v. Peil, 759 F.2d 312, 315 n.4 (3d Cir. 1985).

In the instant motion, the determinative factor is the second–substantial ground for difference of opinion as to the order's correctness. Specifically, defendant asserts that substantial ground for difference of opinion exists regarding the statutory phrase "the pooling of tips among employees who customarily and regularly receive tips" pursuant to 29 U.S.C. § 203(m). As stated in our prior memorandum:

> [S]ection 203(m) permits "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). Turning to the dominant words of the statutory provision, the ordinary meanings of "customarily," "regularly," and "pooling" are neither vague nor ambiguous. According to Webster's New World Dictionary, the adverb "customarily" means "according to custom; usually." WEBSTER'S NEW WORLD DICTIONARY 341 (3d ed. 1988). Next, the adjective "regular," from which the adverb "regularly" is derived, means "recurring at set times or functioning in a normal way." Id. at 1131. Lastly, in ordinary usage, the verb "pool," the root of "pooling," means "to contribute to a pool, or common fund; make a common interest or form a pool (of)." Id. at 1049. Moreover, the adverbs "customarily" and "regularly" are stated in the conjunctive rather than the disjunctive. As such, the FLSA's plain meaning requires employees to customarily **and** regularly receive tips to be included in the tip pool.
>
> Taken as a whole, section 203(m)'s plain meaning beckons the image of customer service employees who

> receive tips directly from customers in a recurring fashion **and** as a matter of occupational custom. Furthermore, the addition of the word "pooling," which means "to contribute" or "make a common interest," signifies that **all** customer service employees with direct customer interaction would "contribute" the tips they personally received into the "common interest" or tip pool. [Thus], section 203(m)'s plain meaning requires that employees who "customarily and regularly receive tips" have more than *de minimis* direct customer interaction.

Ford v. Lehigh Valley Rest. Grp., Inc., No. 3:14-CV-227, 2014 WL 3385128, at *3 (M.D. Pa. July 9, 2014).

The defendant asserts that three district court opinions outside the Third Circuit Court of Appeals are in substantial disagreement with our determination that section 203(m)'s plain meaning requires a level of direct customer interaction. Plaintiffs counter that the great weight of authority, including opinions from the Second, Fifth and Sixth Circuit Courts of Appeal and at least ten (10) district courts outside the Third Circuit support our determination. After a careful review, we agree with plaintiffs.

Defendant first discusses cases from the United States District Courts for the Northern District of Illinois and District of Colorado. The Northern District of Illinois court held that "any employee comes within [section 203(m)] if that employee receives tips, either directly from customers or from other employees who themselves receive direct customer tips, on a regular basis."

6

Turner v. Millennium Park Joint Venture, 767 F. Supp. 2d 951, 953 (N.D. Ill. 2011).  This requirement allowing any employee to receive tips directly from other employees, however, was **contingent** upon a **voluntary** arrangement between the employees.  Id. at 953-54.  Stated differently, Turner does not stand for the proposition that any employee who receives tips from another employee falls under section 203(m).  Rather, it holds that any employee who receives tips "given freely by another employee by agreement, not solely as the result of a management directive or requirement" will be seen as "customarily and regularly" receiving tips for purposes of tip inclusion under section 203(m).  Id. at 954.

     Similarly, the United States District Court for the District of Colorado case focused on the voluntariness of a tip pool arrangement to determine its validity.  The court stated in a footnote that direct customer interaction is not an indispensable condition for an employee's inclusion in a tip pool when employees **agree to share** tips with other employees who help them serve the customers better and more fully.  Giuffre v. Marys Lake Lodge, LLC, No. 11-CV-28, 2012 WL 4478806, at *4 n.4 (D. Colo. Sept. 28, 2012) (emphasis added).  The court's substantive tip pool analysis, however, analyzed customer interaction to determine tip pool eligibility.  Id. at *2-4.

The instant case is distinguishable from Turner and Giuffre because plaintiffs allege that the defendant implemented a **mandatory** tip pooling policy. Specifically, plaintiffs aver that defendant required plaintiffs and other servers to contribute an amount equaling 3% of their gross sales to the tip pool. (Compl. ¶ 16). The Turner decision placed much less emphasis on the level of direct customer interaction because the employees created and **voluntarily** funded their tip pool. Moreover, in Guiffre, the court did, in fact, consider customer interaction to determine the tip pool's validity. Accordingly, the Turner and Giuffre decisions are not in substantial disagreement with our decision.

Finally, defendant contends that a decision from a United States District Court for the Northern District of Texas is in substantial disagreement with our opinion. Lentz v. Spanky's Rest. II, Inc., 491 F. Supp. 2d 663 (N.D. Tex. 2007). In Lentz, the court recognized that restaurant hosts and bartenders clearly could participate in a tip pool, and that employees identified as "expediters" potentially could. Id. at 670-71. In a footnote, the court stated that "[n]othing in [section 203(m)] specifically requires that an employee who shares in a tip pool interact directly with customers." Id. at 671 n.5.

It may be questioned, however, whether Lentz actually adopts a view

different from our rule. Specifically, we have not denied that hosts, bartenders, busboys and other employees performing significant customer service functions with more than *de minimis* direct customer interaction may qualify as tipped employees despite their limited customer interaction. Rather, we determined that the fact intensive inquiry regarding whether an employee has more than *de minimis* customer interaction for purposes of inclusion within a tip pool requires the benefit of a fully developed factual record. In short, defendant has failed to demonstrate substantial ground for difference of opinion. Defendant's motion to certify this issue for immediate appeal will, therefore, be denied.

**Conclusion**

For the reasons stated above, the court will deny defendant's motions to certify this issue for an immediate appeal. Defendant's legal authority is not in substantial disagreement with our prior decision. Indeed, defendant's legal authority may support plaintiffs' cause of action. An appropriate order follows.

**Date:   8/6/14**                                       **s/ James M. Munley**
                                                      **JUDGE JAMES M. MUNLEY**
                                                      **United States District Court**